## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

JOSHUA B. WHITAKER,

       Plaintiff,

v.                                    Case No.  5:18-cv-51-MCR/MJF

UNITED STATES OF AMERICA,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before this court on Defendant's motion for summary judgment (Doc. 44), and Plaintiff's motion for summary judgment (Doc. 56). For the reasons set forth below, the undersigned respectfully recommends that Defendant's motion for summary judgment be granted and that Plaintiff's motion for summary judgment be denied.[1]

## I.    Background

In addressing Defendant's motion for summary judgment the undersigned has considered the facts in the light most favorable to Plaintiff. Plaintiff filed this suit alleging that the Internal Revenue Service ("IRS") wrongfully denied him a refund

_____

[1] The case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive motions. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

of his 2012 taxes. (Doc. 12 at 7). Plaintiff's claim for a refund is based on his alleged eligibility for an earned income tax credit. (Doc. 12).[2] The parties agree that an earned income tax credit is considered an overpayment of taxes and is considered to have been paid on the original due date of the tax return, rather than the actual date the return or a claim for refund was filed. (Docs. 12 at 7, 44 at 5); *see also Israel v. United States*, 356 F.3d 221, 225 (2d Cir. 2004) (noting that "amounts refundable by operation of the EIC are deemed paid as of the filing deadline for the tax year in question"). The parties also agree that the original filing deadline of the 2012 tax return was April 15, 2013. (Doc. 12 and Doc. 44). Thus, the parties agree that Plaintiff should be considered to have "paid" his 2012 taxes on April 15, 2013.

Additionally, the parties agree that a tax return which shows an overpayment by reasons of the earned income tax credit is deemed to contain a claim for a refund. (*See* Docs. 12 at 5, 44 at 5); *see also* 26 C.F.R. § 301.6402-3(a)(1) ("A properly executed individual . . . original income tax return . . . shall constitute a claim for refund or credit within the meaning of section 6402 and section 6511 for the amount

---

[2] As the Supreme Court has explained, "an individual can receive the amount by which his entitlement to an earned-income credit exceeds his tax liability" because § 6401(b) of the Internal Revenue Code defines that amount as an "overpayment," "and § 6402 provides a mechanism for disbursing overpayments, namely, the income tax refund process." *Sorensen v. Sec'y of the Treasury of the United States*, 475 U.S. 851, 859, 106 S. Ct. 1600, 1606 (1986).

of the overpayment disclosed by such return."). The date of the filing of the tax return is also the date of the filing of the claim for a refund. (*Id.*).

Plaintiff concedes that he did not file a tax return (or any claim for a refund) covering his 2012 taxes by the deadline of April 15, 2013. (Doc. 12 at 5).  He also does not allege that he obtained an extension of time to file his tax return, although he claims that he sought extensions. The parties agree that Plaintiff did not file his first 2012 tax return until 2016. (*Id.*). The parties disagree, however, about the date Plaintiff filed his 2012 return in 2016, which is central to the dispute in this case.

Plaintiff asserts that he filed his 2012 return on March 25, 2016.  (Doc. 56 at 2, 6; Doc. 56-1 at 1). In March 2016, Plaintiff apparently was incarcerated in the Bay Correctional Facility.[3] He alleges that he handed his 2012 1040 EZ tax return to a prison official "for mailing on 3-25-16." (Doc. 12 at 5). Further, he alleges that a "Ms. Bailey" logged the return as being mailed on that date to "IRS Service Center For Florida – Austin, TX, 73301-0014." (*Id.*).

Plaintiff attached a copy of this 2012 EZ form tax return to his motion for summary judgment. (Doc. 56-4). On this tax return, Plaintiff calculated that he owed no federal income tax for 2012 and that $446 had been withheld from his pay for

---

[3] Neither party specifically states that Plaintiff was incarcerated during the relevant portions of 2016, but Plaintiff indicates that he provided his tax return to prison personnel so that they would mail it. It is reasonable to assume, therefore, that he was incarcerated then.

federal taxes. (Doc. 56-4 at 2). He also claimed an earned income tax credit of $475. (*Id.*). This gave him a total requested refund of $921. (*Id.*). The return was signed and dated "3/27/16." (*Id.*). According to Defendant, it never received this tax return. (Doc. 44 at 3).

In April 2016, when Plaintiff received his form W2 for 2012, he learned that his employer actually had not withheld any federal income tax from Plaintiff's wages. (Doc. 44-1 at 4). Realizing that his claim for a refund should have been only $475—the amount of the earned income tax credit—and not $921 as he had claimed, on or about April 21, 2016, Plaintiff mailed to the IRS an amended return via the prison mail system. (Doc. 12 at 5). Defendant received this "amended" return on April 30, 2016. (Doc. 44 at 3).

Plaintiff attached a copy of this amended return to his motion for summary judgment. (Doc. 56-9). The amended return was dated "4-21-16" and stamped as received on "04302016" in Austin, Texas by the "IRS-AUSC." (*Id.*).[4] On July 28, 2016, Plaintiff received a denial of claim from the IRS, explaining that the claim for

---

[4] Plaintiff argues that his "original" 2012 tax return must have been received by the IRS well before April 30, 2016, because Plaintiff placed it in the prison mail system on March 25, 2016, (Doc. 56 at ¶ 4), almost a month before he placed the amended return in the prison mail system. Notably, the IRS considers Plaintiff's amended return to be his "original" return, because it purportedly never received the return Plaintiff claims he sent prior to his amended return.

refund was untimely. (Doc. 44-2). Plaintiff appealed and exhausted his administrative remedies within the IRS. (Doc. 12 at 6).

Defendant argues that Plaintiff's claim for a refund should be deemed filed on April 30, 2016—the date the IRS purportedly received the amended return. (Doc. 44 at 2). Defendant argues that it is entitled to summary judgment because "Plaintiff is not entitled to a refund of his 2012 taxes because he did not pay his tax with respect to tax year 2012 within the three-year period preceding his claim for refund." (Doc. 44 at 1). Plaintiff argues that he is entitled to summary judgment because he provided evidence that he filed his 2012 tax return on March 25, 2016, within the requisite period.  (Doc. 56 at 2; Doc. 56-1 at 1).

 The key issue in this case, therefore, is whether Plaintiff's tax return should be deemed filed on the date Plaintiff alleges that he placed it in the prison mail system (March 25, 2016), or the date it was received by the IRS (April 30, 2016).

## II.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986); *Hickson Corp. v. N. Crossarm*

*Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). An issue of fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Hickson Corp.*, 357 F.3d at 1259; *see Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) ("The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.").

In addition, when addressing a motion for summary judgment, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson*, 357 F.3d at 1260 (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510). At "the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S at 249, 106 S. Ct. at 2510-11. A "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry . . . asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ." *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512.

Finally, in evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute

as to the relevant facts. *Beard v. Banks*, 548 U.S. 521, 529, 126. S. Ct. 2572, 2578 (2006); *see Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Anderson*, 477 U.S. at 250-51, 106 S. Ct. at 2511; *Allen v. Bd. of Public Educ. for Bibb Cty.*, 495 F.3d 1306, 1315 (11th Cir. 2007) (holding that summary judgment is inappropriate if "a reasonable factfinder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact").

## III.   Discussion

### A.   <u>Timely Filing as a Prerequisite to Federal Jurisdiction</u>

Defendant argues that Plaintiff is not entitled to a refund of his 2012 taxes because he did not timely file his claim within three years of payment of the 2012 taxes (April 15, 2013), as required by 26 U.S.C. § 6511. (Doc. 44 at 1). Plaintiff, on the other hand, essentially argues that this court should apply the "prison mail box

rule" and deem his claim filed on the date he purportedly gave it to prison officials for mailing (March 25, 2016).[5]

The United States cannot be sued without its consent and such consent is a prerequisite to a federal court exercising jurisdiction over such a lawsuit. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S. Ct. 2961, 2965 (1983); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S. Ct. 767, 769 (1941); *United States v. Timmons*, 672 F.2d 1373, 1378 (11th Cir. 1982). The United States has given limited consent "to be sued for refunds of federal taxes in a carefully articulated statutory scheme, otherwise sovereign immunity would bar such a suit." *Hansen v. United States*, 248 F.3d 761, 763 (8th Cir. 2001) (citing *United States v. Brockamp*, 519 U.S. 347, 350-51, 117 S. Ct. 849, 851 (1997). Specifically, the United States has waived its immunity from lawsuits to recover "any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. § 1346(a)(1); *see United States v. Williams*, 514 U.S. 527, 531, 115 S. Ct. 1611, 1615 (1995); *Baldwin v. United States*, 921 F.3d 836, 839 (9th Cir. 2019). A "waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261, 119 S. Ct. 687, 691 (1999).

---

[5] Plaintiff claims that he simply is asking this court to apply the "common-law mailbox rule," and not the "prison mailbox rule." The position he advocates— ascribing the date he provided his "original" 2012 tax return to prison officials for mailing as the filing date—essentially would require adoption of the prison mailbox rule to his case.

This waiver of immunity for tax claims is limited and must be strictly construed. *Id.* For instance, a plaintiff may not initiate a civil action against the United States for a tax refund unless and "until a claim for refund or credit has been duly filed" with the IRS, in accordance with IRS regulations. 26 U.S.C. § 7422(a); *see United States v. Dalm*, 494 U.S. 596, 609, 110 S. Ct. 1361, 1368 (1990); *Baldwin*, 921 F.3d at 839; *Stocker v. United States*, 705 F.3d 225, 230 (6th Cir. 2013). Section 7422(a)'s requirement of a timely filed administrative claim is jurisdictional. *Comm'r v. Lundy*, 516 U.S. 235, 240, 116 S. Ct. 647, 651 (1996). The "Government is ordinarily immune from suit, and . . . it may define the conditions under which it will permit such actions." *Honda v. Clark*, 386 U.S. 484, 501, 87 S. Ct. 1188, 1197 (1967).

To be "duly filed" with the IRS, a claim for refund or credit must have been filed within the interval set by federal law. *Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1269 (11th Cir. 2006); *Yuen v. United States*, 825 F.2d 244, 245 (9th Cir. 1987) (per curiam). Also, a claimant can recover only taxes paid in the three years (plus any extensions he received) preceding his claim, assuming his claim was timely filed. *See* 26 U.S.C. § 6511(a) & (b); *Lundy*, 516 U.S. at 240, 116 S. Ct. at 651.

In 1916, the Supreme Court determined that filing of a tax claim "is not complete until the document is delivered and received" by the federal government.

*United States v. Lombardo*, 241 U.S. 73, 76, 36 S. Ct. 508, 509 (1916). This became known as the "physical delivery" rule and it was the default rule for tax-refund claims. *See Baldwin v. United States*, 921 F.3d 836, 840 (9th Cir. 2019); *Miller v. United States*, 784 F.2d 728, 730 (6th Cir. 1986) (per curiam).

### 1.   *The Common Law Mailbox Rule vs. 26 U.S.C. § 7502*

To mitigate the physical-delivery rule, "some courts responded by applying the common-law mailbox rule." *Baldwin*, 921 F.3d at 840; *Maine Med. Ctr. v. United States*, 675 F.3d 110, 114 (1st Cir. 2012). In 1884, the Supreme Court acknowledged the existence of the common-law mailbox rule:

> The rule is well settled that if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed.

*Rosenthal v. Walker*, 111 U.S. 185, 193, 4 S. Ct. 382, 386 (1884).  Under this version of the "mailbox rule," a timely mailing creates "a rebuttable presumption that the mailed material was received, and thereby filed." *Miller*, 784 F.2d at 730 (citing *In Re Nimz Transp., Inc.*, 505 F.2d 177, 179 (7th Cir. 1974)); *see Republic of Sudan v. Harrison*, 587 U.S. ___, 139 S. Ct. 1048, 1057 (2019) (noting that the mailbox rule creates "a presumption that a mailed acceptance of an offer is deemed operative when 'dispatched' if it is 'properly addressed'"); *Rosenthal*, 111 U.S. at 193, 4 S.

Ct. at 386 (noting that the presumption of mailing and receipt was an inference that a trier of fact could accept).

In 1954, Congress enacted a statute that incorporated a modified version of the common-law mailbox rule. *See* 26 U.S.C. § 7502; *Baldwin*, 921 F.3d at 840; *Maine Med. Ctr.*, 675 F.3d at 114. Congress enacted § 7502 to create uniformity and "alleviate inequities arising from differences in mail delivery from one part of the country to another." *Miller*, 784 F.2d at 730. "As originally enacted, § 7502 only applied to the filing of tax documents other than tax returns and payments. . . . In 1966, Congress amended § 7502 to encompass tax returns and payments as well." *Sorrentino v. IRS*, 383 F.3d 1187, 1191-93 (10th Cir. 2004) (citing Act of Nov. 2, 1966, Pub. L. No. 89-713, § 5(a), 80 Stat. 1110).

In its current version, § 7502 states in relevant part:

> If any return, claim, statement, or other document required to be filed . . . within a prescribe period or on or before a prescribed date . . . is, after such period or such date, delivered by United States mail to the agency, . . . the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery . . . .

26 U.S.C. § 7502(a)(1). Thus, under § 7502, a taxpayer who mailed a tax return or claim can create a presumption of timely filing by proffering evidence of a United States Postal Service postmark bearing a date within the requisite filing period. *Maine Med. Ctr.*, 675 F.3d at 115. So long as the IRS actually received the mailed document, the postmark date is considered the filing date regardless of when the IRS

actually received the document. 26 U.S.C. § 7502(a)(1); 26 C.F.R. § 301.7502-1(a) & (e)(1); *Surowka v. United States*, 909 F.2d 148, 150-51 (6th Cir. 1990).[6]

The regulations warn potential claimants that "the sender who relies upon the applicability of section 7502 assumes the risk" of exceeding the deadline by virtue of not having a timely postmark, and advises taxpayers to use certified mail to prevent this problem. 26 C.F.R. § 301.7502-1(c)(iii)(A). Because the timely filing of a claim is a jurisdictional prerequisite, and the party seeking to invoke federal court jurisdiction has the burden of establishing that jurisdiction exists, the claimant has the burden of establishing timely filing by establishing the date of the postmark. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 785 (1936) (holding that the party asserting federal court jurisdiction must establish facts supporting an exercise of jurisdiction by a preponderance of the evidence); *Estate of Wood v. Comm'r*, 909 F.2d 1155, 1161 (8th Cir. 1990) ("To obtain the benefit of section 7502, the taxpayer must offer proof of postmark—not mere evidence of

---

[6] Although not relevant to this case—because Plaintiff does not contend that he sent his "original" return via certified or registered mail—a taxpayer also can establish the filing date by mailing the tax return using certified or registered mail. *See* 26 U.S.C. § 7502(c); *Maine Med. Ctr.*, 675 F.3d at 115. Under § 7502(c), when a tax return was sent by certified or registered mail, the date of the postmark is deemed the date of filing. 26 U.S.C. § 7502(c)(1); *Huizar v. Carey*, 273 F.3d 1220, 1223 n.3 (9th Cir. 2001); *Thomas v. United States*, 166 F.3d 825, 829 (6th Cir. 1999).

mailing . . . ."); *Miller*, 784 F.2d at 729 (noting that the "taxpayer has the burden of establishing the existence of federal court jurisdiction").

A plurality of Circuits—including the Second, Fifth, Sixth, and Ninth Circuits—have concluded that § 7502 provides the exclusive means to establish the date of filing by mail, and that Congress's enactment of § 7502 precludes use of the common-law mailbox rule. *See Baldwin*, 921 F.3d at 841-42; *Miller*, 784 F.2d at 730-31; *Deutsch v. CIR*, 599 F.2d 44, 46 (2d Cir. 1979); *Drake v. Comm'r*, 554 F.2d 736, 738-39 (5th Cir. 1977). This is consistent with the Supreme Court's holding that a waiver of sovereign immunity should be strictly construed in favor of the sovereign and against expansion. *Blue Fox, Inc.*, 525 U.S. at 261, 119 S. Ct. at 691; *Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 2096 (1996). "[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S. Ct. 2698, 2702 (1981).

Additionally, pursuant to statutory authorization, the Secretary of the Treasury promulgated a regulation which—consistent with the Second, Fifth, Sixth, and Ninth Circuits—limits the evidence of the date of mailing to the postmark, except in case in which the postmark is illegible. *See* 26 C.F.R. § 301.7502-1(c) and (e)(1). In the words of the Ninth Circuit:

> The statute as implemented places emphasis on the reliability of an official post office certification as evidence of timely mailing. We will

> not create an additional substitute for timely filing by allowing secondary evidence to be offered in lieu of the tangible evidence of official third-party certification favored by Congress and the Secretary.

*Shipley v. Comm'r of Internal Revenue*, 572 F.2d 212, 213 (9th Cir. 1977) (per curiam).

In contrast, the Third, Eighth, and Tenth Circuits have held that § 7502 simply provides two means of establishing the date that a document was filed by mail, but that the common-law mailbox rule also remains a viable option. *See Phila. Marine Trade Assoc.-Int'l Longshoremen's Assoc. Pension Fund v. CIR*, 523 F.3d 140, 147 (3d Cir. 2007);[7] *Estate of Wood v. CIR*, 909 F.2d 1155, 1160 (8th Cir. 1990); *Sorrentino*, 383 F.3d 1187 at 1191-93.[8]

---

[7] *But see Boccuto v. Comm'r*, 277 F.2d 549, 553 (3d Cir. 1960) (noting that the court was "obliged to look at the date of postmark stamped on the envelope" and not when the taxpayer submitted the envelope to the post office for mailing).

[8] More recently, the Tenth Circuit has limited and called into question its decision in *Sorrentino*. *See Crook v. Comm'r Of Internal Revenue Serv.*, 173 F. App'x 653, 657 (10th Cir. 2006) (stating that the Tenth Circuit has "not yet decided whether § 7502 provides the exclusive method by which timely mailing can be proven" and opining that "*Sorrentino* is equivocal at best").

The Ninth Circuit previously held that the common-law mailbox rule survived the enactment of § 7502. *See Anderson v. United States*, 966 F.2d 487, 489-90 (9th Cir. 1992). More recently, however, the Ninth Circuit held that § 7502 "provides the exclusive means to prove delivery" and "recourse to the common-law mailbox rule is no longer available." *Baldwin*, 921 F.3d at 841-42.

This court must follow the precedent established by the Eleventh Circuit. *In re Hubbard*, 803 F.3d 1298, 1309 (11th Cir. 2015) ("[C]ourts of this circuit are bound by the precedent of this circuit."). The Eleventh Circuit adopted as precedent the decisions issued by the Court of Appeals for the Fifth Circuit prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209-10 (11th Cir. 1981). Accordingly, in addition to the decisions of the Eleventh Circuit, this court is bound by the decisions of the Fifth Circuit as it existed prior to the creation of the Eleventh Circuit. *Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985). Thus, the decision issued in 1977 by the Fifth Circuit in *Drake* is binding precedent for this court. *See Drake*, 554 F.2d at 736-39; *see also Pugsley v. C.I.R.*, 749 F.2d 691, 693 (11th Cir. 1985) (citing with approval the Fifth Circuit's explanation that the language of section 7502 is "clear, explicit, and strictly limited"). As noted above, *Drake* held that the language of section 7502 supplanted the common-law mailbox rule. *Drake*, 554 F.2d at 739. As the Fifth Circuit stated, "to create an exception where the undisputed facts clearly fall within the literal and unambiguous language of the statute would do violence to the statutory scheme and substantially undermine the purpose of the provision." *Drake*, 554 F.2d at 739.

To the extent Plaintiff attempts to rely on the prison mailbox rule, it is worth noting the limited scope of that rule. The Supreme Court created the prison mailbox rule when it held that—for purposes of Rule 4(a)(1) of the Federal Rules of Appellate

Procedure—a notice of appeal that a *pro se* prisoner sought to file in a federal court of appeals should be considered filed on the date the prisoner delivered it "to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 275, 108 S. Ct. 2379, 2385 (1988); *Daker v. Comm'r, Ga. Dep't of Corrs.*, 820 F.3d 1278, 1286 (11th Cir. 2016). In reaching its decision, the Court reasoned that the word "filed" was ambiguous insofar as neither Rule 4(a)(1) nor the applicable statute set "forth criteria for determining the moment at which . . . 'filing' has occurred." *Houston* at 272-76, 108 S. Ct. 2383-85; *Bonilla v. United States Dep't of Justice*, 535 F. App'x 891, 893 (11th Cir. 2013). Additionally, in creating the prison mailbox rule, the Supreme Court never stated that the rule applies to every document a prisoner seeks to mail. Rather, the rule announced by the Supreme Court applied only to notices of appeal submitted to federal courts of appeals, and was subsequently codified consistent with that limitation. *See* Fed. R. App. P. 4(c).

Other courts expanded the rule announced in *Houston v. Lack* to apply the prison mailbox rule to other *court filings*. *See Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001) (per curiam) (noting that courts expanded the prison mailbox rule to include many other types of court filings). This expansion was codified to apply to appellate documents and habeas petitions filed with federal *courts*. *See* Fed. R. App. P. 25(a)(2)(A)(iii); Fed. R. Bankr. P. 8002(c); Rules Governing Section 2254 Proceedings For the United States District Courts, Rule

3(d); Rules Governing Section 2255 Proceedings For the United States District Courts, Rule 3(d).

Consistent with its historical roots, in the Eleventh Circuit, the prison mailbox rule is limited to filings made to courts. *See Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) ("Under the 'prison mailbox rule,' a pro se prisoner's *court filing* is deemed filed on the date it is delivered to prison authorities for mailing.") (emphasis added); *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993) (holding that the prison mailbox rule announced in *Houston* applies to *pro se* prisoners seeking to file in *federal courts* complaints under 42 U.S.C. § 1983 and the Federal Tort Claims Act) (emphasis added). Plaintiff has not cited any authority demonstrating that the prison mailbox rule applies to tax returns submitted to prison officials for mailing to the IRS.

Furthermore, the Supreme Court's holding in *Fex v. Michigan* strongly suggests that the prison mailbox rule does not apply generally to all documents a prisoner seeks to mail to government entities. 507 U.S. 43, 47, 113 S. Ct. 1085, 1089 (1993). In that case, the prisoner sought to apply the prison mailbox rule to a request for disposition under the Interstate Agreement on Detainers that he had provided to prison officials to mail. *Fex*, 507 U.S. at 46, 113 S. Ct. at 1088. In determining the date the document was "caused to be delivered," the Supreme Court did not apply the prison mailbox rule and instead held that the document was "caused to be

delivered" on the date the prosecutor's office and court received the request, and not on the date the inmate gave the request to prison officials for mailing. *Fex*, 507 U.S. at 47, 113 S. Ct. at 1089.

Other courts have noted that "the prison mailbox rule does not apply when there is a 'specific statutory or regulatory regime' governing the filing at issue." *Crook v. Comm'r of Internal Revenue Serv.*, 173 F. App'x 653, 656 (10th Cir. 2006) (quoting *Longenette v. Krusing*, 322 F.3d 758, 763 (3d Cir. 2003)); *Smith v. Conner*, 250 F.3d 277, 277, 279 (5th Cir. 2001); *Nigro v. Sullivan*, 40 F.3d 990, 994-95 (9th Cir. 1994). More specifically, when the particular statute defines the term "filing" or "filed"—as § 7502 essentially does—courts have seen no reason to usurp a statutory or regulatory definition by resorting to the prison mailbox rule. *See Crook*, 173 F. App'x at 656 (interpreting the word "filed" defined in Section 7502(a)(1) of the Internal Revenue Code); *Smith*, 250 F.3d at 279 (holding that the court "shall resort to *Houston* if the rule does not clearly define filing" and in all other cases the court "will enforce the regulations as written"); *Nigro*, 40 F.3d at 994 (noting that the prison-mailbox rule did not apply because the administrative regulations defined the word "filed" as "when the receipt is issued.").

This is consistent with the respect courts must show to the statutory text. It is also consistent with the rule of statutory construction that a statutory definition of a term excludes unstated potential definitions of that term. *See Meese v. Keene*, 481

U.S. 465, 484, 107 S. Ct. 1862, 1873 (1987) ("It is axiomatic that the statutory definition of the term excludes unstated meanings of that term."); *Colautti v. Franklin*, 439 U.S. 379, 392-93, n.10, 99 S. Ct. 675, 684 n.10 (1979) ("As a rule, '[a] definition which declares what a term "means" . . . excludes any meaning that is not stated.'"). Because Congress's definition of "filed" in § 7502 did not include a statement that a document would be considered filed when delivered to prison officials, there is no reason to think that Congress intended to have the prison mailbox rule apply.

This also is consistent with the Fifth Circuit's holding in *Drake* that § 7502 precludes application of the common-law mailbox rule. Congress has not indicated that the prison mailbox rule is excepted from the preclusive effect of § 7502. That is, a claimant's imprisonment does not afford the claimant additional time to mail documents to the IRS beyond that already afforded by § 7502. *See Rich v. Comm'r of Internal Revenue*, 250 F.2d 170, 175 (5th Cir. 1957) (holding that, in light of § 7502, absent a postmark showing a timely filing, a document for the Tax Court was not timely filed by a prisoner merely because he delivered it to prison officials for mailing). Congress also has not indicated that its limited waiver of sovereign immunity should be expanded by application of the common-law or prison mailbox rule.

The only question remaining, therefore, is whether Plaintiff has created a genuine issue regarding timely filing under the requirements of § 7502.

### 2.   *Application of § 7502 to this Case*

Plaintiff has not alleged that he filed his return (and claim for refund) using registered or certified mail. (Doc. 12 at 5). Plaintiff, therefore, can rely only on a United States Postal Service postmark to establish the timeliness of his filing. 26 U.S.C. § 7502(a) ("the date of the United States postmark stamped on the cover in which such return . . . or other document . . . is mailed shall be deemed to be the date of delivery . . . ."). Plaintiff, however, has not provided the postmarked envelope demonstrating that he mailed his return within the requisite period. Instead, he attempts to rely on an unsigned note purportedly from "Classification Counselor Mrs. Doll." (Doc. 56-5).[9] In that unsigned note, Mrs. Doll states that "[o]n 3/25/16 Mailroom Staff Ms. Bailey sealed, timestamped and post-dated the 2012 tax return.

---

[9] This court may not consider unsigned notes or affidavits in support of or in response to a motion for summary judgment. Rule 56(c) does not authorize a party to support or oppose a motion for summary judgment by producing an unsworn affidavit or note. An "unsigned affidavit is not sufficient evidence in support of a motion for summary judgment." *Mason v. Clark*, 920 F.2d 493, 495 (8th Cir. 1990); *Pension Benefit Guar. Corp. v. Heppenstall Co.*, 633 F.2d 293, 300 (3d Cir. 1980) (noting that because an "affidavit was unsigned it was not in evidence and could not provide any basis for denying the summary judgment motions"). Indeed, "an 'unsigned affidavit' is a contradiction in terms. By definition an affidavit is a 'sworn statement in writing made . . . under an oath or on affirmation before . . . an authorized officer.'" *Mason*, 920 F.2d at 495 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 35 (1965)).

This is logged in the legal/privileged mail log." (*Id.*). Plaintiff also submitted a copy of his "original" return (Doc. 56-4 at 2-3), his amended return (Doc. 56-9 at 3-5), and affidavits of inmates who helped or observed him preparing his 2012 tax return in 2016. (Doc. 56-1 at 4, 6). As discussed above, none of this evidence suffices because none of this evidence entails a postmark, as required by § 7502 as discussed above. Accordingly, Plaintiff's claim for a refund is deemed filed on the date it was received by the IRS: April 30, 2016. *Drake*, 554 F.2d at 739; *Rich*, 250 F.2d at 175.

It is undisputed that, for purposes of an earned income tax credit, the law considers Plaintiff's 2012 taxes to be paid on April 15, 2013 (the date his 2012 tax return was due). *See Israel*, 356 F.3d at 225. Plaintiff's claim for a refund, therefore, was filed more than three years after the date the tax was paid. Federal law precludes claims for refunds filed more than three years after that tax was paid. *See* 26 U.S.C. § 6511(b).[10] Under the law, therefore, Plaintiff is not entitled to a refund, and this court lacks the ability to award a refund to Plaintiff, because a timely filed refund request is a prerequisite to a court's jurisdiction over a refund claim. *See* 26 U.S.C. § 7422(a); *Dalm*, 494 U.S. at 601-02, 110 S. Ct. at 1365 ("[U]nless a claim for refund of a tax has been filed within the time limits imposed [under federal law], a suit for

---

[10] Plaintiff asserts that the IRS acted arbitrarily and capriciously in denying his claim. (Doc. 56 at 16-17). Because application of § 6511(b) required the IRS to deny Plaintiff's claim, Plaintiff cannot show that the IRS acted arbitrary or capriciously in doing so.

refund . . . may not be maintained in any court."). When "the requirements of § 7422(a) are not met, a court has no subject matter jurisdiction to hear the claim for refund." *Wachovia Bank, N.A.*, 455 F.3d at 1264. Accordingly, there is no genuine dispute as to any material fact, and Defendant is entitled to judgment as a matter of law.

### B.   <u>Equitable Estoppel</u>

To avoid the consequences of his late filing, Plaintiff asserts that Defendant should be estopped from invoking § 6511's three-year deadline because the IRS sent him a disallowance letter—dated and sent to Plaintiff on May 5, 2017— in which the IRS incorrectly stated that May 15, 2016, was Plaintiff's (already expired) deadline to file his claim for 2012 taxes. (Doc. 56-13 at 2). Plaintiff intimates that he relied on this letter (Doc. 56-13), even though the IRS issued this letter on May 5, *2017*, more than a year after the deadline to file his return had expired (April 15, 2016), and long after the date Plaintiff claims that he sent his initial 2012 tax return to the IRS (March 25, 2016).

"The question of whether equitable estoppel is ever available against the federal government is unresolved," but it is clear that the party asserting estoppel against the government has a heavy burden. *Ferry v. Hayden*, 954 F.2d 658, 661 (11th Cir. 1992) (citing *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 61, 104 S. Ct.

2218, 2224 (1984));[11] *see Tefel v. Reno*, 180 F.3d 1286, 1302 (11th Cir. 1999);

*Feldman v. C.I.R.*, 20 F.3d 1128, 1134 (11th Cir. 1994) (holding that "equitable

estoppel will lie against the government only in the most extreme circumstances").

In the Eleventh Circuit, the defense of estoppel may be employed against the

government only when: (1) the traditional elements of estoppel are pleaded;[12] (2) the

government acted in a proprietary or private capacity as opposed to its sovereign

capacity, (3) the government agent was acting within the scope of his authority; and

(4) the government committed some affirmative misconduct. *United States v.

McCorkle*, 321 F.3d 1292, 1297 (11th Cir. 2003); *Tefel*, 180 F.3d at 1303; *United

States v. Killough*, 848 F.2d 1523, 1526 (11th Cir. 1988); *United States v. Vonderau*,

---

[11] The Supreme Court noted a sound reason for not applying the doctrine of equitable estoppel against the government:

> When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant.

*Heckler*, 467 U.S. at 60, 104 S. Ct. at 2224.

[12] The traditional elements of estoppel are: (1) the words, acts, or conduct of a person caused another person to believe in the existence of a certain state of things; (2) the person was willful or negligent with respect to his words, acts or conduct; and (3) the other person detrimentally relied on the words acts or conduct of the first person. *Tefel*, 180 F.3d at 1302 (citing *Fed. Deposit Ins. Corp. v. Harrison*, 735 F.2d 408, 413 (11th Cir. 1983)); *United States v. Aetna Ins. Co.*, 923 F.2d 1521, 1526 (11th Cir. 1991).

837 F.2d 1540, 1541 (11th Cir. 1988) (citing *Fed. Deposit Ins. Corp. v. Harrison*, 735 F.2d 408, 410 (11th Cir. 1984)). "Affirmative misconduct requires more than governmental negligence or inaction; otherwise, prong two and prong four would be redundant." *McCorkle*, 321 F.3d at 1297.

Plaintiff has failed to establish the elements of an equitable estoppel defense in at least four ways. Each and every one of these failures precludes the applicability of this defense.

### 1. *Failure to Demonstrate Proprietary Action*

First, Plaintiff failed to create a genuine issue that the IRS acted in a private or proprietary capacity. "Activities undertaken by the government primarily for the commercial benefit of an individual agency are subject to estoppel while actions involving the exercise of exclusively government or sovereign powers are not." *Harrison*, 735 F.2d at 411. "Proprietary governmental functions include essentially commercial transactions involving the purchase or sale of goods and services and other activities for the commercial benefit of a particular government agency." *Id.* Sovereign functions, on the other hand, are those "unique government functions" undertaken "for the benefit of the whole public." *Id.*

The Constitution provides that "Congress shall have Power To lay and collect Taxes . . . ." U.S. CONST. art I, § 8, cl. 1; *Id.* amend XVI. Thus, the Supreme Court has held that the power to promulgate and enforce tax laws is an essential attribute

of sovereignty. *Franchise Tax Bd. of Cal. v. Hyatt*, 538 U.S. 488, 498, 123 S. Ct. 1683, 1690 (2003); *see also Harrison*, 735 F.2d at 411 (citing *Auto. Club of Mich. v. Comm'r*, 353 U.S. 180, 77 S. Ct. 707 (1957)). Determinations of whether a person is entitled to a tax refund clearly falls within the Government's sovereign function of taxing. As such, Plaintiff has failed to establish that the Government was acting in a proprietary or private capacity.

### 2.   *Failure to Demonstrate Affirmative Misconduct*

Second, Plaintiff has not created a genuine issue that the IRS committed affirmative misconduct regarding his 2012 tax return. For the doctrine of equitable estoppel to apply, the Eleventh Circuit requires an affirmative showing that the government engaged in misconduct. *Savory v. United States Attorney Gen.*, 449 F.3d 1307, 1319 (11th Cir. 2006) (citing *McCorkle*, 321 F.3d at 1297). This requires more than a "showing of governmental negligence or inaction." *Id.* Here, Plaintiff attached the Defendant's response to his interrogatories in which Defendant admitted that the IRS erroneously told Plaintiff that his (expired) filing deadline was May 15, 2016. (Doc. 56-15 at 4). Plaintiff also argues that the IRS admitted that it makes mistakes. There is no dispute that the IRS was mistaken when it told Plaintiff—long after the filing deadline—that his filing deadline for his 2012 tax

return was May 15, 2016.[13] Plaintiff has not shown, however, that the IRS's mistaken assertion was more than mere negligence. *See Savoury*, 449 F.3d at 1319; *Feldman*, 20 F.3d at 1134 (holding that "equitable estoppel will lie against the government only in the most extreme circumstances"). Considered in the light most favorable to Plaintiff, he has failed to create a genuine issue as to whether the IRS committed misconduct warranting estoppel.

### 3.   *Failure to Demonstrate Reasonable Reliance*

Third, Plaintiff has not created a genuine issue regarding reasonable reliance on the IRS's erroneous assertion. A party asserting the defense of equitable estoppel "must have relied on its adversary's conduct 'in such a manner as to change his position for the worse,' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Heckler*, 467 U.S. at 59, 104 S. Ct. at 2223 (quoting 3 JOHN N. POMEROY, EQUITY JURISPRUDENCE § 805, p. 192 (S. Symons ed. 1941)) (period and footnote omitted). In order for reliance on a misrepresentation to be reasonable, the party claiming estoppel must show that he did not know, nor should have known, the truth. *Heckler*, 467 U.S. at 59, 104 S. Ct. at 2223; *Nat'l Cos. Health*

---

[13] Plaintiff notes that the IRS contradicted itself when it stated that it received his claim for a refund on two different dates (May 11, 2016 and April 30, 2016), both of which cannot be true. (Doc. 56 at 16-17). Defendant implicitly has conceded that the IRS's assertion that it received Plaintiff's amended 2012 tax return in May is an error. (Doc. 44 at 2). Such an error is not "misconduct" that warrants estoppel.

*Ben. Plan v. St. Joseph's Hos. of Atlanta, Inc.*, 929 F.2d 1558, 1572 (11th Cir. 1991),

*abrogated on other grounds by*, *Geissal v. Moore Med. Corp.*, 524 U.S. 74, 118 S.

Ct. 1869 (1998).

The disallowance letter undermines Plaintiff's argument that he reasonably

relied on the erroneous date. The letter states in relevant part:

> We can only credit or refund an overpayment on a return you file within
> *3 years from its due date*. We consider tax you withheld and estimated
> tax as paid *on the due date (i.e. April 15)* for filing your tax return.

(Doc. 56-13 at 2) (emphasis added). Although the letter also incorrectly states that

the expired deadline to have submitted a return was May 15, 2016, the letter clearly

indicates that Plaintiff would need to have filed his return "within *3 years from its*

*due date*." (Doc. 56-13 at 2).  The letter also plainly identified the due date for the

tax return as April 15. (*Id.*). Three years after April 15, 2013, was April 15, 2016.

Read in its entirety, therefore, the letter provided contradictory information.

No reasonable person would rely on contradictory information, especially

because the erroneous portion of the letter contradicted the relevant statute. Congress

clearly stated the deadline for filing Plaintiff's claim in § 6511(b)(2)(A). Once

Congress has clearly spoken on an issue via a statute, an agency letter contradicting

the statute is necessarily "unreasonable," thus obviating a claim of reasonable

reliance on such a letter. *See Entergy Corp v. Riverkeeper, Inc.*, 556 U.S. 208, 218

n.4, 129 S. Ct. 1498, 1505 n.4 (2009). In short, a person cannot reasonably rely on a

written statement from a government agent that is contrary to statutory law. *Heckler*, 467 U.S. at 63, 104 S. Ct. at 2225. The "United States is neither bound nor estopped by acts of its officers or agents . . . to do or cause to be done what the law does not sanction or permit." *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409, 37 S. Ct. 387, 391 (1917). For this reason, too, Plaintiff has failed to establish that the equitable estoppel doctrine applies to this case.

### 4.    *Failure to Demonstrate Detrimental Reliance*

Finally, Plaintiff has not shown that he detrimentally relied on the IRS letter. Detrimental reliance is an essential element of equitable estoppel. *Lyng v. Payne*, 476 U.S. 926, 935, 106 S. Ct. 2333, 2339 (1986) ("An essential element of any estoppel is detrimental reliance on the adverse party's misrepresentations . . . ."); *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011); *Savoury*, 449 F.3d at 1319. To demonstrate detrimental reliance, a party must establish that his reliance on a statement deprived him of something to which he was entitled of right. *Heckler*, 467 U.S. at 62, 104 S. Ct. at 2225. It is temporally impossible for Plaintiff to demonstrate that in March or April 2016, when he was deciding when to mail his 2012 tax return, he relied on a letter that the IRS did not even send to him until May 2017. Plaintiff has not created a genuine issue regarding detrimental reliance because he has not shown that any reliance on the IRS letter deprived him of something he had a right to enjoy.

Accordingly, assuming *arguendo* that the doctrine of equitable estoppel applies against the government, for each of these reasons, Plaintiff cannot show that it applies in this case.

## IV.  Conclusion

For the reasons set forth above, the undersigned respectfully

**RECOMMENDS** that:

1.      Defendant's Motion for Summary Judgment (Doc. 44) be **GRANTED** and Plaintiff's Motion for Summary Judgment (Doc. 56) be **DENIED**.

2.      The Clerk of the Court be directed to enter judgment in favor of Defendant on Plaintiff's claims.

3.      The Clerk of the Court be directed to close the file.

At Panama City, Florida, this 27th day of August, 2019.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.